```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/12/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
DENNIS MARTINEZ, DOUGLAS NGUYEN, :
JAMES HALLENBECK, JILL :
WILDBERGER, and DISABILITY RIGHTS :
NEW YORK :
  :     20-CV-3338 (VEC)
                                  Plaintiffs,     :
  :     OPINION AND ORDER
           -against-     :
  :
  :
ANDREW CUOMO, IN HIS OFFICIAL     :
CAPACITY AS GOVERNOR OF NEW YORK     :
STATE,     :
  :
                                  Defendant.     :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

In the middle of the most significant health crisis this country has experienced in decades, this case focuses on a subset of New Yorkers who have been effectively, if unintentionally, excluded from obtaining up-to-date information regarding the crisis from their Governor. Governor Andrew Cuomo's failure to provide in-frame American Sign Language ("ASL") interpretation during his daily press briefings regarding the COVID-19 pandemic has excluded certain deaf New Yorkers from the benefits of those briefings. Plaintiffs, four deaf individuals and Disability Rights New York ("DRNY"), argue that Cuomo's failure deprives them of effective communication in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). Specifically, Plaintiffs argue that although videos of ASL interpretations of Governor Cuomo's briefings are available through a link on the Governor's website, because they lack internet access, they cannot view the videos. Similarly, while some of the channels that broadcast Governor Cuomo's live briefings include closed captioning, Plaintiffs argue that the closed captions do not accommodate them because they

1

cannot read English at all or well enough to understand the information.  As a result, Plaintiffs seek a mandatory preliminary injunction to require Governor Cuomo to provide an in-frame ASL interpreter during televised broadcast briefings.  The Court GRANTED Plaintiffs' motion for a preliminary injunction on May 11, 2020.  Dkt. 18.  This opinion explains the Court's rationale.

## BACKGROUND

For the past two months, the COVID-19 pandemic has devastated New York City; schools have closed, businesses have closed, and social distancing requirements have been instituted.  COVID-19 has disproportionately affected New Yorkers; confirmed COVID-19 cases are four times greater in New York than in any other state, and more than one third of all domestic COVID-19 related deaths have occurred in New York.  Complaint ("Compl."), Dkt. 1 ¶ 2.  In the face of such unprecedented uncertainty, danger, and fear, New Yorkers have looked to Governor Cuomo for guidance.

On or about March 1, 2020, Governor Cuomo began holding daily, televised press briefings regarding the COVID-19 outbreak in New York.  Compl. ¶ 30.  Governor Cuomo's briefings typically last between thirty and sixty minutes and include critical information concerning the health crisis.  *Id.* ¶¶ 31, 35.  Specifically, the briefings have included information regarding the number of confirmed COVID-19 cases in New York, the closing of schools and non-essential businesses, the stay-at-home order, the availability of testing, social distancing requirements, the requirement to wear a mask, rent suspension, the coordination of local, state, and federal government emergency response systems, and other information about how New Yorkers can stay safe and help limit the spread of the virus.  *See id.* ¶ 35.  The briefings have also featured government officials from the New York State Department of Health, New York State Division of Budget, and the Army National Guard.  *Id.* ¶ 32.  On April 13, 2020, Governor Cuomo hosted a multi-state press briefing with the Governors of New Jersey, Delaware,

Connecticut, Rhode Island, Pennsylvania, and Massachusetts, during which he announced the "Multi-State Council to Get People Back to Work and Restore the Economy." *Id.* ¶ 47.  Local and major news networks, including ABC, CBS, NBC, and Fox, have broadcast Governor Cuomo's briefings live to a national audience. *Id.* ¶ 34. Governor Cuomo's daily briefings have been widely touted as providing reliable and up-to-date information; Cuomo has emerged as a prominent and steady voice in a time of crisis.[1]

### i. Plaintiffs' Backgrounds

Plaintiffs are four deaf individuals and DRNY, a non-profit organization that advocates on behalf of individuals with disabilities.  Plaintiff Dennis Martinez is deaf and his primary language is ASL.  *Id.* ¶¶ 50-51.  Martinez works as a Deaf Service Advocate at the Harlem Living Center, where he provides up-to-date information regarding the COVID-19 pandemic to deaf clients.  *Id.* ¶¶ 51, 55.  Martinez is unable to understand Governor Cuomo's live briefings due to the lack of an ASL interpreter.[2]  *Id.* ¶ 54.

Plaintiff Douglas Nguyen is deaf and communicates only through ASL.  *Id.* ¶¶ 59-60. Mr. Nguyen cannot read, write, or understand English.  *Id.* ¶ 61.  Mr. Nguyen does not own a computer and does not have access to the internet.  *Id.* ¶ 62.  Mr. Nguyen has watched Governor

---

[1]   *See* Jesse McKinley et al., *How Cuomo, Once on Sidelines, Became the Politician of the Moment,* N.Y. Times (Mar. 24, 2020), https://www.nytimes.com/2020/03/24/nyregion/governor-andrew-cuomo-coronavirus.html. According to news reports, even President Trump – who has direct access to the country's most knowledgeable medical experts – views Governor Cuomo's briefings as "must-see-TV." *See* Katie Rogers et al., *Home Alone at the White House: A Sour President, With TV His Constant Companion,* N.Y. Times (April 23, 2020), https://www.nytimes.com/2020/04/23/us/politics/coronavirus-trump.html.

[2]   Neither the complaint nor the reply brief with its accompanying declarations clarify the exact state of Martinez's access to the internet.  The complaint states that he "has to seek out videos on social media platforms with ASL interpretation," Compl. ¶ 58, which suggests that he has some internet access.  The supplemental declaration submitted with the reply brief states, however, that he "cannot consistently access Governor Cuomo's briefings through any of the means currently available." Martinez Decl., Dkt 17-1 ¶ 7.  If Martinez were the only Plaintiff that lack of clarity could be problematic.  Because he is not, the lack of clarity is not dispositive.

Cuomo's daily briefings on television but cannot understand them because there is no in-frame ASL interpreter.  *Id.* ¶ 64.

Plaintiff James Hallenbeck is deaf and his primary language is ASL.  *Id.* ¶¶ 67-68.  Mr. Hallenbeck is able to understand some written English, but he is not fluent.  *Id.* ¶ 68.  Mr. Hallenbeck cannot read closed captioning, transcripts, PowerPoint slides, or any other written account of Governor Cuomo's press briefings.  Hallenbeck Decl., Dkt. 17-1 ¶ 4.  Mr. Hallenbeck does not own a computer and cannot access the Governor's briefings online.  Compl. ¶ 71; Hallenbeck Decl., ¶¶ 5-8.

Plaintiff Jill Wildberger is deaf and her primary language is ASL.  Compl. ¶¶ 74-75.  Ms. Wildberger has a learning disability that makes it difficult for her to read English.  *Id.* ¶¶ 76, 78, 79.  Ms. Wildberger cannot read closed captioning, transcripts, PowerPoint slides, or any other written account of Governor Cuomo's press briefings.  Wildberger Decl., Dkt. 17-1 ¶ 4.  Although Ms. Wildberger owns an internet capable smartphone, because of her learning disability, she does not know how to access Governor Cuomo's press briefings online.  *Id*. ¶¶ 5-6.

Plaintiff DRNY brings this action on behalf of itself and the four individual Plaintiffs.  DRNY states that it has received a growing number of "complaints from deaf New Yorkers who are unable to understand Governor Cuomo's daily briefings due to the lack of in frame televised ASL interpretation."  Compl. ¶ 37.  DRNY characterizes this suit as the result of "one of the most significant calls to action DRNY has ever experienced."  Pls.' Reply, Dkt. 17 at 8.

### ii.      Governor Cuomo's Current Accommodations

Governor Cuomo states that he is "committed to ensur[ing] that all New Yorkers are promptly and accurately informed about developments related to the COVID-19 pandemic," and argues that he provides multiple means by which deaf individuals can access the information in his briefings. Compl. ¶ 40. For example, the briefings include PowerPoint slides that visually convey much of the information covered, and Cuomo notes that some television stations provide closed captioning of the briefings. Def. Opp., Dkt. 13 at 4-5. Additionally, the Governor's website includes links to live and recorded video presentations of his briefings with an ASL interpreter. *Id.* at 5-6. Unlike the 49 other Governors in this country and New York City Mayor Bill de Blasio, however, Governor Cuomo does not provide an in-frame ASL interpreter in his live televised briefings. Compl. ¶ 36; Pls.' Reply at 9.

Although they acknowledge the accommodations Governor Cuomo has provided to facilitate access to the daily press briefings for some deaf New Yorkers, Plaintiffs maintain that they are still unable to understand or access the information in the briefings without an in-frame ASL interpreter. Specifically, Plaintiffs argue that they lack internet access necessary to view the ASL interpretations online and that they are unable to read the closed captioning in English. Accordingly, Plaintiffs seek a mandatory preliminary injunction to require Governor Cuomo to provide an in-frame ASL interpreter during his televised briefings.

## DISCUSSION

A preliminary injunction is an "extraordinary remedy and should not be routinely granted." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Capstone Logistics*

*Holdings, Inc. v. Navarrete*, 736 F. App'x 25, 26 (2d Cir. 2018); *North American Soccer League, LLC v. United States Soccer Federation, Inc*., 883 F.3d 32, 37 (2d Cir. 2018). For mandatory injunctions, which "alter rather than maintain the status quo," such as the one at issue here, "the movant must show a 'clear' or 'substantial' likelihood of success" on the merits. *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth*., 684 F.3d 286, 294 (2d Cir. 2012) (citing *Bronx Household of Faith v. Bd. of Educ.,* 331 F.3d 342, 349 (2d Cir. 2003)).

### A. Plaintiffs Have Demonstrated a Clear and Substantial Likelihood of Success on the Merits

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA seeks to prevent not only intentional discrimination against people with disabilities, but also discrimination that results from "thoughtlessness and indifference," or, in other words, from "benign neglect." *Alexander v. Choate,* 469 U.S. 287, 295 (1985); 42 U.S.C. § 12112(b)(5)(A) (defining discrimination to include failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"). As the Second Circuit has explained, "[i]t is not enough to open the door for the handicapped; a ramp must be built so the door can be reached." *Dopico v. Goldschmidt,* 687 F.2d 644, 652 (2d Cir. 1982) (internal quotation marks and alterations omitted). Similarly, Section 504 of the RA prohibits "programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals." *McElwee v. Cnty. of Orange,* 700 F.3d 635, 640 (2d Cir. 2012) (quoting 29 U.S.C. § 794(a)). As the "standards adopted by the two statutes are nearly identical," *id.*, the Court will consider the merits of these claims together.

In order to establish a claim of discrimination under Title II of the ADA or the RA, Plaintiffs must demonstrate that (1) they are "qualified individuals" with a disability; (2) that the Defendant is subject to the pertinent Act; and (3) that Plaintiffs were denied the opportunity to participate equally in or to benefit equally from Defendant's services, programs or activities, by reason of their disability. *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196-97 (2d Cir. 2014). There is no dispute that Plaintiffs are qualified individuals with a disability or that Defendant is a "public entity" subject to the ADA and RA; the parties' disagreement lies in whether Plaintiffs have been, and are being, denied the opportunity to benefit equally from Defendant's press briefings by reason of their deafness.

A public entity discriminates against a disabled individual when it fails to provide "meaningful access" to its benefits, programs, or services. *Disabled in Action,* 752 F.3d at 197; *see also Choate,* 469 U.S. at 301 (holding that the ADA requires not only that people with disabilities be provided with access to public services, but that they "be provided with *meaningful* access" (emphasis added)); *Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir. 2003) (explaining that the relevant inquiry is "whether those with disabilities are as a *practical matter able to access* benefits to which they are legally entitled") (emphasis added). Individuals may be deprived of meaningful access to public programs if a public entity fails to modify existing practices. *Disabled in Action,* 752 F.3d at 197. The ADA's implementing regulations explicitly prohibit a public entity from denying individuals with disabilities access to its services because its "facilities are inaccessible to or unusable by [such individuals]." 28 C.F.R. § 35.149. Accordingly, public entities must operate programs so that the program, "when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." *Id.* § 35.150(a). In the context of auxiliary aids, a public entity must "take appropriate steps to ensure that communications with [people] with disabilities are as effective as communications with others,"

7

including, where necessary, the provision of "appropriate auxiliary aids and services." 28 C.F.R. § 35.160(a)(1), (b)(1).  Moreover, the public entity must consider that, "in order to be effective, auxiliary aids and services must be provided in *accessible formats*." *Id.* (emphasis added).

To ensure meaningful access for disabled individuals, a public entity may have to make reasonable accommodations.  *Henrietta D.,* 331 F.3d at 273.  The Court notes that a public entity need not "employ any and all means to make" services accessible; the ADA and RA "require[ ] only reasonable modifications that would not fundamentally alter the nature of the service provided" or "impose an undue financial or administrative burden." *Tennessee v. Lane,* 541 U.S. 509, 531–32 (2004); *see also Henrietta D.,* 331 F.3d at 281.  That said, Plaintiffs are not obligated to prove that they have been "completely prevented from enjoying a service, program, or activity." *Disabled in Action,* 752 F.3d at 198.  Instead, Plaintiffs must simply show that the public entity has failed to institute reasonable accommodations sufficient to provide them with "meaningful access" to the services. *Id.* at 199 (citing *Choate,* 469 U.S. at 301); *Henrietta D.,* 331 F.3d at 273.

Here, the primary dispute is whether Governor Cuomo's existing accommodations adequately ensure Plaintiffs' meaningful access to his press briefings.  Governor Cuomo argues that they do; he emphasizes that he employs a "multiplicity of ways" to ensure that deaf individuals can access the important information in the briefings.[3]  The Court disagrees.

---

[3]   Governor Cuomo relies heavily on *Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013), to argue that, although his accommodations may not be "perfect," the "multiplicity of means by which information is distributed ensures that people with disabilities have an equal opportunity to access . . . information as those without disabilities." Def. Opp. at 18 (quoting 980 F. Supp. 2d at 655).  The Court notes, however, that among the "multiplicity of means" at issue in *Brooklyn Center* was in-frame ASL interpretation at the Mayor's press conferences.  980 F. Supp. 2d at 632.  Moreover, here, the "multiplicity of means" employed by Governor Cuomo do *not* ensure that people with disabilities have an equal opportunity to access the information he is providing; Plaintiffs are unable to access the information due to their lack of internet access.  Finally, in *Brooklyn Center,* the Court concluded that plaintiffs "provided no evidence that the means of communication employed by the

Although the Court acknowledges that Defendant's accommodations need not be "perfect," they still must ensure that the press briefings are "readily accessible" to the Plaintiffs in this case. *Disabled in Action,* 752 F.3d at 201 (explaining that although the "BOE is not expected to create poll sites out of whole cloth, it is required to operate its voting program so that when viewed in its entirety, [the program] is readily accessible to ... individuals with disabilities.") (internal citations omitted); *D'Amico v. New York State Bd. of Law Examiners*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993) (explaining that although the Board "did make some accommodations for plaintiff," the ADA requires that "an individual analysis [] be made with every request for accommodations and the determination of reasonableness [] be made on a case by case basis.").

Although Governor Cuomo is providing reasonable accommodations for many deaf New Yorkers, he has failed to make the "reasonable accommodations" necessary to give these Plaintiffs access to his briefings. *D'Amico,* 813 F. Supp. at 221. As noted above, the online ASL interpretations of Governor Cuomo's briefings are *not* readily accessible to Plaintiffs or any other similarly situated deaf New Yorker who lacks internet access.[4] The live broadcasts with

---

City during an emergency are any less effective at reaching people with disabilities as those without." *Id.* at 656. That is not the case here; in addition to the individual Plaintiffs' allegations, the complaint alleges that DRNY has received a "large number of complaints from deaf New Yorkers who are unable to understand Governor Cuomo's daily briefings due to the lack of in frame televised ASL interpretation."

Defendant's reliance on *Loye v. Cty. of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010), is similarly misplaced. In *Loye*, the Eighth Circuit affirmed the district court's grant of summary judgment for the county, holding in part that the ADA and RA did not require the county to provide an ASL interpreter at every meeting held to discuss emergency decontamination in the plaintiffs' community. That conclusion, however, was based on the fact that an ASL interpreter *was* provided at most of the meetings and Plaintiffs were unable to identify any "information they missed nor any harm suffered as a result of any alleged failure to provide interpreters [at every meeting]." *Id.* at 499. Here, by contrast, Governor Cuomo has not provided an in-frame ASL interpreter in a single live press briefing, and Plaintiffs have alleged that they missed critical information communicated during those briefings. *See, e.g.,* Compl. ¶¶ 57, 65 73, 81; Wildberger Decl. ¶ 7.

[4]   The COVID-19 pandemic has exposed the disparity in internet access for individuals across New York and across the United States. The difficulties surrounding the transition to remote work and schooling provided inarguable evidence that many people in America, including many in New York, do not have internet access. *See, e.g.,* Geoffrey Starks, *To Fight Coronavirus, Millions More Americans Need Internet Access*, N.Y. Times (Mar. 19, 2020), https://www.nytimes.com/2020/03/19/opinion/internet-broadband-coronavirus.html ("The coming weeks will lay bare the already-cruel reality of the digital divide: tens of millions of Americans cannot access or cannot afford

closed captioning, while perhaps accommodating deaf New Yorkers who are fully literate in English, do not accommodate Plaintiffs and other similar deaf New Yorkers who cannot read English.[5] In other words, without in-frame ASL interpretation, Plaintiffs are, "as a practical matter, [un]able to access benefits to which they are legally entitled."[6] *Henrietta D,* 331 F.3d at 273. Defendant's suggestion that Plaintiffs are merely "choos[ing] not to take advantage of the various means by which the Governor communicates critical information during his press briefings," Def. Opp. at 18, is unfounded, conclusory, and cavalier. While Governor Cuomo's accommodations may "constitute a reasonable accommodation under some circumstances," and may be utilized and valued by deaf New Yorkers with internet access, the "determination of reasonableness must be made on a case by case basis." *D'Amico*, 813 F. Supp. at 221. The current accommodations – however well-intentioned – simply do not provide "meaningful access

---

the home broadband connections they need to telework, access medical information and help young people learn when school is closed."); *Locked Out of the Virtual Classroom,* N.Y. Times (Mar. 27, 2020), https://www.nytimes.com/2020/03/27/opinion/coronavirus-internet-schools-learning.html ("America came face to face with the festering problem of digital inequality when most of the country responded to the coronavirus pandemic by shutting elementary and high schools that serve more than 50 million children."); Suzanne Woolley et al., *U.S. Schools Trying to Teach Online Highlight a Digital Divide,* Bloomberg (Mar. 26, 2020), https://www.bloomberg.com/news/articles/2020-03-26/covid-19-school-closures-reveal-disparity-in-access-to-internet ("[M]any U.S. households lack not only devices but also sufficient internet connections."); Erin Mansfield et al., *Coronavirus for Kids Without Internet: Quarantined Worksheets, Learning in Parking Lots,* USA Today (April 1, 2020), https://www.usatoday.com/story/news/education/2020/04/01/coronavirus-internet-speed-broadband-online-learning-school-closures/5091051002/. ("A study by Microsoft in 2018 estimated that about half of Americans – 163 million people – do not have high-speed internet at home.").

While the accommodations provided via the internet are impressive, the right of deaf New Yorkers to access Governor Cuomo's briefings and get critical information regarding the COVID-19 pandemic "should not be contingent on the happenstance" that they have access to the internet. *Disabled in Action,* 752 F.3d at 200 ("The right to vote [for disabled individuals] should not be contingent on the happenstance that others are available to help").

[5]    Plaintiffs also point out that closed captioning is not provided on all channels broadcasting the briefings and, even when closed captioning is provided, questions from the audience are not captioned. Compl. ¶ 41. Moreover, Plaintiffs allege that there are often errors or omissions in the transcription. *Id.* ¶ 42.

[6]    Defendant argues that Plaintiffs fail to "allege facts supporting a reasonable inference that they cannot access the ASL interpretation the Governor already provides on his website." The Court disagrees. *See* Compl. ¶¶ 50-81; Nguyen Decl. ¶¶ 4-7; Hallenbeck Decl. ¶¶ 2-8; Wildberger Decl. ¶¶ 2-8.

in the circumstances [presented] here." *Disabled in Action,* 752 F.3d at 201; *see also Jones v. Nat'l Conference of Bar Examiners*, 801 F. Supp. 2d 270, 285, 289 (D. Vt. 2011) ("It cannot reasonably be disputed that what renders an examination 'accessible' to one disabled individual may not render it 'accessible' to another. … For this reason, the court concludes that Defendant's extensive evidence regarding accommodations that were deemed appropriate many years ago, or for different individuals with different needs, constitutes an inappropriate benchmark for what must be offered" to Plaintiff); *Wong v. Regents of Univ. of California*, 192 F.3d 807, 818 (9th Cir. 1999) ("Because the issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations").

In sum, Plaintiffs have established that, despite the accommodations currently offered, they cannot access Governor Cuomo's briefings without an in-frame ASL interpreter and have therefore demonstrated a likelihood of success on the merits. *See Jones,* 801 F. Supp. 2d at 285 (explaining that the Court's analysis "remains an individualized inquiry, and not a one-size-fits-all approach."). Notably, in opposing Plaintiffs' requested accommodation, Defendant does *not* argue that providing an in-frame ASL interpretation would be burdensome. Nor is there any evidence that this proposed accommodation would "fundamentally alter the nature" of Governor Cuomo's press briefings or "impose an undue financial or administrative burden." *Disabled in Action,* 752 F.3d at 202. In fact, as noted *supra,* the 49 other Governors in this country, as well as the Mayor of New York City, provide this accommodation.

**B. Plaintiffs Will Suffer Irreparable Harm if a Preliminary Injunction is Not Granted**

Irreparable harm requires a showing that Plaintiffs will suffer an "actual and imminent" injury that "cannot be remedied if a court waits until the end of trial to resolve the harm." *Singas Famous Pizza Brands Corp. v. New York Adver. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012). In

evaluating whether the plaintiff will suffer imminent harm, "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are adequate to compensate for that injury." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (internal quotation marks omitted).

Here, Plaintiffs are seeking vital and continually changing information regarding their health and safety. Governor Cuomo's decision to hold a *daily* press briefing reflects the reality that information regarding the COVID-19 pandemic is constantly evolving and his assessment that it is important for New Yorkers to have ready access to the latest information. Thus, the Court agrees that, without access to Cuomo's daily briefings, Plaintiffs are subject to actual and imminent injury that cannot be remedied if the court were to wait "until the end of trial to resolve the harm." For example, in the upcoming days and weeks, Governor Cuomo will not only continue to update New Yorkers about the daily COVID-19 toll, but he will also provide updated information regarding his thinking and plans relative to reopening businesses, resumption of non-essential travel, lessening of social distancing restrictions, diagnostic testing, and public transportation. Without immediate implementation of an in-frame ASL interpreter, Plaintiffs and other similarly situated deaf New Yorkers will continue to be denied timely access to this critical information, leaving them less able to comply with current orders and advice, less able to prepare for the future, and more anxious about current conditions and the future. Legal remedies, such as monetary damages, would be wholly inadequate to compensate for these injuries.

**C. The Balance of Hardships Weighs Heavily in Favor of Plaintiffs and an Injunction is in the Public Interest**

In considering a motion for a preliminary injunction, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs must establish that the balance of hardships tips in their favor regardless of the likelihood of success. *Salinger*, 607 F.3d at 79-80. In addition, a court may award preliminary injunctive relief only if the "public interest would not be disserved." *Id.* at 80.

Here, the Court finds that the balance of hardship tips decidedly in favor of the Plaintiffs. As noted *supra*, Governor Cuomo does not argue that implementing an in-frame ASL interpreter would be burdensome.[7] By contrast, Plaintiffs have demonstrated that they experience hardship on a daily basis as a result of their inability to access Governor Cuomo's briefings. Moreover, the Court agrees that Plaintiffs cannot follow Governor Cuomo's executive orders or health department recommendations if they are not aware of them. Pls.' Mem. of Law at 15. As a result, Plaintiffs and members of the deaf community who are similarly situated to Plaintiffs cannot "ensure that they act in the public's interest, and may unknowingly endanger themselves or others." *Id*. Furthermore, the Court sees no disservice to the public by providing Plaintiffs' proposed accommodation.

---

[7] The Defendant has not explained why he resisted Plaintiffs' pre-litigation pleas for him to implement in-frame ASL interpretation. *See* Compl. ¶¶ 40, 44-46; Pls.' Mem. of Law, Dkt. 4 at 3. His position in this litigation comes down to his view that the law does not require it; he has done other things to accommodate the deaf, and therefore, he will not provide in-frame ASL interpretation. That dismissive attitude towards this segment of his constituency – beyond being unkind – runs counter to the law of the land as articulated in the ADA and RA.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction was GRANTED on May 11, 2020.  Defendant was ordered to immediately implement in-frame ASL interpretation during his daily press briefings.  If in-frame ASL translation cannot be implemented by **May 13, 2020**, Defendant must submit a detailed affidavit by **May 13, 2020**, explaining why and providing a date by which it will be implemented.

The Court urges the parties to proceed with the currently-scheduled settlement conference.  If the case fails to settle, the deadline for fact discovery is **June 8, 2020.**  A pretrial conference will be held on **June 12, 2020 at 10:00 a.m.**

**SO ORDERED.**

**Date:  May 12, 2020**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**